IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK LAWAYNE PERRY,<br><br>              Petitioner,<br><br>vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,[1]<br><br>              Respondent. | No. 2:12-cv-02270-JKS<br><br>MEMORANDUM DECISION |

Patrick Lawayne Perry, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. It appears that Perry has been released and is now on supervised parole. Respondent has answered, and Perry has replied. Perry has not filed a change of address with the Court.

I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal, the Court summarized the procedural background of the case as follows:

> [Perry] was arraigned on October 31, 2005. He was represented by at least nine different attorneys before trial. He made unsuccessful *Marsden* motions[2] as to at least five attorneys. Sometimes he had appointed counsel, and at other times he retained counsel.

---

1      Because it appears that Perry has been released but is on post-release supervision, Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for P.L. Vasquez, former Warden, North Kern State Prison. FED. R. CIV. P. 25(c).

2      *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

On January 16, 2009, Judge White granted [Perry's] *Faretta* motion[3].

On the first day of trial, Tuesday, March 3, 2009, [Perry], who had posted bail the day before, moved for a continuance, claiming he was not prepared because he had been denied pro per resources while in custody. His motion was denied after an in camera hearing at which the pro per coordinator explained what assistance had been given to [him].

On the second day of trial, Thursday, March 5, 2009, before jury selection, [Perry] asked for counsel, stating that although he had had concerns about the competence of Jon Lippsmeyer, his last attorney, Mr. Lippsmeyer was familiar with the case and there was no reason he "wouldn't be able to go forward Monday. Mr. Lippsmeyer had this case for more than two years." [Perry] later reiterated his view that "Monday is still an option of us being able to go forward with Mr. Lippsmeyer."

The prosecutor opposed the motion, stating in part that [Perry] had been thoroughly warned by Judge White about the dangers of self-representation, and in the face of such warnings, [Perry] "flat out said I am ready to go pro per and that was in January. [¶] We are now in March[, 2009] and this is a 2005 case. It's one count. And it is the People's position [Perry] is simply just trying to drag this process out. And now that he's out of custody, this is one more thing that he wants to essentially use to stay out of custody and keep this case going. [¶] We are ready to go to trial. We do have a right to trial." She also stated that [Perry] had made "numerous" *Marsden* motions and "[h]e knows what's going on. And this is a stall tactic and we're ready to go."

[Perry] contended he had only recently been released and had not had time to prepare, he was not familiar with the new CALCRIM jury instructions, and he lacked trial skills he would need to oppose the prosecutor and insure the laws were properly upheld. [Perry] conceded he had represented himself in two criminal cases before.

In denying [Perry's] motion, the trial court summarized the history of this case, including [Perry's] filing of numerous unsuccessful *Marsden* motions, [Perry] repeatedly retaining counsel and then receiving appointed counsel, the fact that many different attorneys had represented [Perry] before he exercised his *Faretta* rights, the fact that all of the continuances in the case had been at [Perry's] request, "[a]nd every single one was because you had some problem with another lawyer," and the fact that [Perry] had represented himself in two criminal cases before.

The trial court concluded granting the motion would cause "substantial and very prejudicial" "disruption or delay" to the People, and "[i]t seems to me that you have step-by-step for three and a half years been trying to manipulate the legal system to your advantage by getting lawyers kicked off your case and new lawyers brought in. [¶] . . . And it seems to me you are trying to stall the legal process."

---

³        *Faretta v. California*, 422 U.S. 806  (1975) (holding that a defendant in a state criminal trial has the constitutional right to refuse appointed counsel and represent himself when he does so voluntarily and intelligently).

> After trial, but before sentencing, the trial court placed on the record the fact that, *before* denying [Perry's] reverse-*Faretta* motion, the court checked to see if Mr. Lippsmeyer would be available, but learned he had been in a "significant three strikes case next door," in which his client was a prisoner accused of assaulting a guard. "So even if I had wanted to appoint Mr. Lippsmeyer at the time, I could not do that because he was involved in that trial. So . . . that would not have been an option for us at any time."

*People v. Perry*, No. C062278, 2011 WL 684602, at *2-3 (Cal. Ct. App. Feb. 28, 2011).

During jury selection, Perry, who was on bail, left the court and did not return. *Id.* at *1. The trial court found that he voluntarily absented himself from trial, and the trial was completed in absentia. *Id.* A jury convicted Perry of possessing cocaine base for sale, and found true allegations that he had two prior felony narcotic convictions and had served three prior prison terms. *Id.* The trial court sentenced Perry to 13 years in prison followed by 3 years of supervised parole.

Through counsel, Perry directly appealed, arguing that the trial court abused its discretion in denying his reverse-*Faretta* motion to terminate his *pro per* status and appoint counsel, and that the trial court erred in conducting the trial in his absence without appointing stand-by counsel.

Before his appeal was decided, Perry filed a *pro se* petition for a writ of habeas corpus with the superior court, arguing that his prior convictions were not proven by a preponderance of the evidence at a preliminary hearing, the trial court did not have jurisdiction to amend the complaint, and the trial court failed to hear a motion to exclude evidence of his prior convictions. On December 8, 2010, noting that his appeal was pending and all of Perry's complaints could be brought on direct appeal, the superior court dismissed the petition for lack of jurisdiction.

On December 4, 2010, also before his appeal was decided, Perry filed a *pro se* petition for writ of habeas corpus with the Court of Appeal, in which he argued that: 1) the trial court denied his right to counsel of choice by removing attorney Russell Miller without inquiring into Miller's reasons for removing himself from the case and without making a record of reasons for granting Miller's motion; 2) the trial court failed to set a time, date and place to hear a motion; and 3) the trial court abused its discretion in failing to reappoint attorney Carmen Butler after she allegedly abandoned his case.  The Court of Appeal denied relief on December 16, 2010.

On February 28, 2011, the Court of Appeal resolved Perry's direct appeal, modifying the judgment to award Perry additional conduct credit, and otherwise affirming in a reasoned, unpublished opinion.  *Perry*, 2011 WL 684602, at *9.  The Court of Appeal held that "the trial court's explicit finding that [Perry] was trying to delay justice . . . [was] well-supported," and that the trial court acted well within its discretion in denying Perry's reverse-*Faretta* motion.  *Id.* at *5-7.  With respect to Perry's claim that the trial court erred in proceeding to trial in his absence, the court concluded:

> When [Perry] made his *Faretta* motion he chose to defend himself.  After jury selection began, [Perry] chose to leave the courtroom, flee, and *not* defend himself.  As former Presiding Justice Robert K. Puglia stated in a *Faretta* case, "Respect for the dignity and autonomy of the individual is a value universally celebrated in free societies and uniformly repressed in totalitarian and authoritarian societies.  Out of fidelity to that value defendant's choice must be honored even if he opts foolishly to go to hell in a handbasket.  At least, if the worst happens, he can descend to the netherworld with his head held high.  It's called, 'Doing It My Way.'" (*People v. Nauton* (1994) 29 Cal. App. 4th 976, 981.)
>
> [Perry's] way, in effect, was to default by walking out of the trial.  [Perry] cannot now fault the trial court for honoring his voluntary choices about self-representation.

*Perry*, 2011 WL 684602, at *8.

On March 30, 2011, Perry filed a *pro se* petition for writ of error coram nobis with the Court of Appeal, arguing that his appellate counsel was ineffective for failing to raise on direct appeal the arguments that: 1) the trial court abused its discretion by relieving attorney Miller over Perry's objection; 2) the trial court failed to set a date, time and place to hear and rule on various motions; 3) the trial court erred in failing to reappoint attorney Butler; 4) his prior convictions were not proved in a preliminary hearing by a preponderance of the evidence; and 5) the trial court did not have jurisdiction to amend the complaint. The Court of Appeal treated the petition for writ of error coram nobis as a petition for writ of habeas corpus and denied it on April 15, 2011.

On April 4, 2011, Perry filed a counseled petition for review, in which he raised the same arguments that he had unsuccessfully raised on appeal to the Court of Appeals. The California Supreme Court summarily denied review on May 11, 2011.

On December 20, 2011, Perry filed an additional *pro se* petition for habeas corpus and motion for reconsideration with the superior court, alleging that: 1) he was denied his right to counsel of his choice when attorney Miller moved to be relieved from the case without stating any reasons on the record and the trial court granted the motion without making a record for granting that motion; 2) the trial court abused its discretion in failing to reappoint attorney Butler; 3) various trial judges failed to rule on certain motions; 4) the People failed to prove his prior convictions by a preponderance of the evidence at a preliminary hearing; 5) the trial court was without jurisdiction to amend the complaint to include his prior convictions where they had not been first proved by a preponderance of the evidence at a preliminary hearing; 6) trial counsel was ineffective at sentencing for failing to bring to the court's attention the fact that

several of his post-conviction motions had been sealed and not ruled upon and for failing to request a new trial based on the fact that there was no live testimony at trial to prove those priors; and 7) appellate counsel was ineffective for failing to comply with his requests on what issues to argue on direct appeal.  On February 9, 2012, the superior court denied relief in a reasoned opinion.

On March 12, 2012, Perry filed a second *pro se* petition for writ of habeas corpus with the Court of Appeal, again arguing that: 1) the trial court denied his right to counsel of choice by relieving Mr. Miller from the case without requiring an explanation or stating on the record its reasons for granting Mr. Miller's motion; 2) the trial court abused its discretion in failing to reappoint Ms. Butler; 3) various trial court judges failed to set a time, date, and place to hear his motions, and failed to rule on those motions; 4) the People failed to prove his prior convictions at a preliminary hearing and by a preponderance of the evidence; 5) because his priors were not proved at a preliminary hearing by the preponderance of the evidence, the trial court was without jurisdiction to amend the complaint to include those priors; 6) counsel was ineffective at sentencing for failing to bring to the court's attention that some of his post-conviction motions were sealed and had not been ruled on; 7) appellate counsel was ineffective for failing to raise certain issues on direct appeal, and for failing to remove himself from the case when Perry attempted to fire him; 8) sentencing counsel was ineffective for failing to inform Perry that he had filed a suppression motion; and  9) the superior court erred in transferring his habeas case to the judge who presided over his trial.  On April 12, 2012, the Court of Appeal summarily denied Perry relief.

At some point around this time, Perry filed a motion for reconsideration of the superior court's denial of his petition for writ of habeas corpus, in which he challenged the court's transfer of the petition to the judge who presided over trial. On April 16, 2012, the superior court construed Perry's motion as an attempt to disqualify the presiding judge and concluded that it was untimely, that it did not meet the procedural requirements for such a motion, and that it did not set forth any grounds for disqualification as it was mostly a disagreement with the ruling against him.

Finally, on April 26, 2012, Perry filed a *pro se* petition for writ of habeas corpus with the California Supreme Court, raising the same arguments that he raised in his petition to the Court of Appeal. The California Supreme Court summarily denied review on August 22, 2012. On August 22, 2012, Perry filed his *pro se* Petition for a Writ of Habeas Corpus with this Court.

## II. GROUNDS RAISED

In his Petition before this Court, Perry argues that: 1) the trial court denied him his counsel of choice by allowing Mr. Miller to remove himself over Perry's objection without requiring Mr. Miller to state on the record his reasons for wanting to remove himself and without making a record of reasons for granting Mr. Miller's motion; 2) the trial court abused its discretion in failing to reappoint Ms. Butler, who he claims abandoned his case; 3) the trial court failed to hear and rule on several motions; 4) the trial court failed to hold a preliminary hearing before amending the complaint to include his prior convictions; 5) the trial court was without jurisdiction to amend the complaint to include his prior convictions where they were not proved at a preliminary hearing by a preponderance of the evidence; 6) trial counsel was ineffective for failing to inform Perry that he had filed a suppression motion; 7) counsel was ineffective at

sentencing for failing to "press" the court to hear outstanding motions which had been filed but not ruled on; 8) appellate counsel was ineffective for failing to raise certain claims on direct appeal; and 9) the superior court abused its discretion by assigning his habeas case to the same superior court judge who presided over his trial  Perry also requests an evidentiary hearing.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 778-79 (2010).  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

IV. DISCUSSION

Claims 1 & 2: Claims relating to the substitution of counsel

Perry was arraigned on October 31, 2005, and he hired William Sneed to represent him. On November 22, 2005, Sneed asked to be relieved and a public defender, John Lippsmeyer, was appointed.

On November 29, 2005, Mr. Lippsmeyer declared a conflict and Carmen Butler, a conflict criminal defender ("CCD"), was appointed to represent Perry on December 6, 2005.  On December 20, 2005, Perry made a *Marsden* motion, which the trial court denied the following day.  Perry made a second *Marsden* motion on January 17, 2006, and the court denied it on January 24, 2006.

At some point prior to February 2, 2014, Ms. Butler withdrew from the case and Armando Enriquez, a fellow CCD panel attorney, substituted in as Perry's counsel.  It is not clear from the record why Ms. Butler left and when Mr. Enriquez took over the case.  Perry has attached to his Petition transcripts in which he complained to the trial court that Ms. Butler left. He claimed that Mr. Enriquez informed him that Ms. Butler "declared her own conflict."

On February 14, 2006, Perry made a *Faretta* motion which he dropped the same day.  On March 10, 2006, during his preliminary hearing, Perry requested a continuance so that he could again hire Mr. Sneed to represent him.  He also requested that the court determine if there was a conflict of interest between him and Mr. Enriquez.  The court denied Perry's request for a continuance, a preliminary hearing was conducted, and Perry was held to answer on count one. Trial was set for May 2, 2006.  On March 24, 2006, Perry made a *Marsden* motion, which the court denied.  On April 25, 2006, only a few days before trial was scheduled to begin, the trial court granted Perry's motion for a continuance and trial was reset for June 19, 2006.

On June 6, 2006, Mr. Enriquez was relieved due to a conflict and Arturo Reyes, another CCD panel attorney, was appointed.  The trial date was vacated and reset several times over the next few months.  On October 6, 2006, Mr. Reyes declared a conflict of interest and was relieved.

-10-

On October 12, 2006, Guy Leighton was appointed to represent Perry.  On October 20, 2006, Perry made a *Marsden* motion which the court denied on October 23, 2006.  Trial was again reset for January 10, 2007.  Perry made an additional *Marsden* motion which was denied on November 27, 2006.  On December 4, 2006, Mr. Leighton declared a conflict and was relieved.

Lawrence Smith, a criminal defense panel lawyer, was appointed to represent Perry at some point after Mr. Leighton was relieved.  Perry made a *Marsden* motion on December 21, 2006.  The January 19, 2007, trial date was reset for January 22, 2007, and ultimately continued to February 1, 2007.  On February 1, 2007, Mr. Sneed replaced Mr. Smith as Perry's attorney. The trial date was vacated and reset several more times.

In April of 2007, Mr. Lippsmeyer appeared as counsel for Perry on two separate occasions, and on June 1, 2007, he was deemed Perry's attorney of record.  On November 16, 2007, Lippsmeyer was relieved and Russell Miller was retained by Perry.  On July 25, 2008, Mr. Miller requested to be relieved; Perry then belatedly arrived at court and Mr. Miller was reinstated as his attorney.  The trial date was again reset several more times.

On October 23, 2008, Mr. Miller was relieved and Alex Veyluper was appointed to represent Perry.  On October 31, 2008, Mr. Lippsmeyer was again appointed.  Perry filed a *Marsden* motion on December 10, 2008, which the court denied on December 12, 2008.  Trial was reset for January 21, 2009.

On January 15, 2009, Perry made a *Faretta* motion, and the court granted that motion the following day.  Trial was reset for February 25, 2009, and then trailed to March 3, 2009.

On March 3, 2009, Perry, who was out on bail, moved for a continuance on the ground that he was not prepared for trial.  The court denied Perry's motion.  On March 5, 2009, the second day of trial, Perry announced to the court that he was going to "disqualify [himself] from these proceedings as far as being pro per."  Perry suggested that Mr. Lippmeyer be reappointed to represent him.  The court denied Perry's reverse-*Faretta* motion, concluding that he was intelligent, "more than capable" of representing himself, and unintimidated by the legal process. The court further noted that any further delay would be prejudicial to the People's case, concluding:

> It seems to me that you have step-by-step for three and a half years been trying to manipulate the legal system to your advantage by getting lawyers kicked off your case and new layers brought in.
> And that you don't like the lawyers that you've been given, and maybe they're some legitimate reasons there.  I don't know, but I notice all the *Marsden* motions were denied up to this point.  And it seems to me you are trying to stall the legal process.

Perry now raises two claims with respect to the trial court's substitution of counsel.  First, he argues that the trial court denied him the right to his counsel of choice by allowing Mr. Miller, whom he had retained, to withdraw over his objection without requiring Mr. Miller to state his reasons on the record, and without making a record for granting Mr. Miller's motion. The superior court held that Perry failed to state with particularity the facts upon which he was relying to justify relief and that he failed to support his claim with reasonably available documentary evidence.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend VI. This right "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though

he is without funds." *Miller v. Blacketter*, 525 F.3d 890, 895 (9th Cir. 2008) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 614-25 (1989); *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). A defendant who establishes that his right to counsel of choice was violated need not demonstrate prejudice in order to be entitled to relief, as a defendant claiming ineffective assistance of counsel must do. *Blackletter*, 525 F.3d at 895 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) (explaining that once the right to counsel of choice is violated, "[n]o additional showing of prejudice is required to make the violation 'complete'")).

The United States Supreme Court has emphasized, however, that the right to counsel of choice is "circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). "Indeed, there are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent [him]; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar." *Blacketter*, 525 F.3d at 895 (citing *Wheat*, 486 U.S. at 159). In addition, trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id.* (quoting *Gonzalez-Lopez*, 548 U.S. at 152). As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* (quoting *Gonzalez-Lopez*, 548 U.S. at 152).

Here, it appears that Mr. Miller filed several motions on Perry's behalf, and that Perry at no point made a *Marsden* motion complaining about Mr. Miller's effectiveness. Mr. Miller

-13-

withdrew from the case on October 23, 2008, but the minute order does not state why he was relieved.  Respondent argues that this Court should deny Perry relief on the ground that he has failed to substantiate his claim.  Perry, however, has attached to his Petition documentation indicating that he unsuccessfully attempted to obtain transcripts of the October, 23, 2008, hearing in which Mr. Miller was relieved.  Perry also requests an evidentiary hearing on the matter.

Without a record of why Mr. Miller requested to be relieved and why that request was granted by the trial court, the Court cannot meaningfully review Perry's claim that the trial court erroneously denied his right to retained counsel of choice.  The Court therefore reserves ruling on Claim 1 as well as whether an evidentiary hearing is warranted on Claim 1, and hereby orders Respondent to supplement the record regarding the circumstances of Mr. Miller's withdrawal. *See* Rule 7(a), Rules Governing § 2254 Cases in the United States District Courts ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."); *Blackledge v. Allison,* 431 U.S. 63, 82 (1977) ("Under Rule 7, the judge can direct expansion of the record to include any appropriate materials that 'enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing.'") (citation and footnotes omitted).  At a minimum, Respondent should determine if the October 23, 2008, hearing in which Mr. Miller was relieved was transcribed, and if so, obtain a copy of the reporter's transcript of that hearing.

Perry next claims that the trial court abused its discretion in allowing Ms. Butler to "abandon the case" without first notifying the court, and for allowing Mr. Enriquez, who had less

extensive knowledge of the case, to represent him.  Perry again essentially argues that he was

denied his counsel of choice when Mr. Enriquez replaced Ms. Butler.  The superior court denied

him habeas relief on this claim:

> [Perry] does not give sufficient detail, nor does he sufficiently document the claim with enough reporter's transcript, to demonstrate any error by the court.  Indeed, [Perry] alleges that he had made a [*Marsden* motion] with regard to Carmen Butler, who was appointed through the Conflict Criminal Defender (CCD), and that thereafter Butler "abandoned" him and that Enriquez, also on the CCD panel, began making court appearances on his behalf.  [Perry] had no right to demand that any particular attorney be appointed on his behalf, [and] thus had no right to demand that an attorney be reappointed who he had attempted to have removed and who "abandoned" him thereafter (*People v. Daniels* (1991) 52 Cal. 3d 815).  [Perry] also fails to attach reporter's transcript of the first appearance with Enriquez to show that Enriquez was never formally appointed.  Nor does [Perry] attach any reporter's transcript showing that at any time before he chose to self-represent at trial, he requested and was denied the reappointment of Carmen Butler or that he requested and was denied the removal of Enriquez, during the time period in which Enriquez represented him, on the ground that Enriquez had never been appointed as his counsel.

In support of his argument, Perry has attached transcripts of his complaint to the trial

court that Ms. Butler left without explanation.  He told the court that Ms. Butler was "doing a

wonderful job," but that he filed a *Marsden* motion because "I wanted to do a [motion for the

suppression of evidence pursuant to California Penal Code §] 1538.5 the way I wanted to do it."

He claimed that Ms. Butler "disappeared" and "had no reason to leave . . . without making

mention on the record like all the other lawyers did to why she was leaving."  He stated that he

had filed a complaint against her with the bar association for abandoning his case.  According to

Perry, Mr. Enriquez "showed up without the Court even knowing" that he was replacing Ms.

Butler and announced that he was Perry's new lawyer.  Perry claimed that Mr. Enriquez told him

that Ms. Butler left because "[s]he declared her own conflict."  Perry claimed he "had no

alternative but to go with Armando Enriquez."

Regardless of why Ms. Butler, a CCD attorney, left and was replaced by Mr. Enriquez, a fellow CCD attorney, Perry's claim must fail.  He essentially argues that he was denied his right to the counsel of his choice, but unlike Mr. Miller, Ms. Butler was an appointed attorney.  The United States Supreme Court has expressly held that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them," *Gonzalez-Lopez,* 548 U.S. at 151, and thus "a defendant may not insist on representation by an attorney he cannot afford," *Wheat,* 486 U.S. at 159.  Perry makes no allegation that he wanted to or could afford to retain private counsel in lieu of Mr. Enriquez's appointment to his case.  *See Shell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000).  Although Perry might have preferred that Ms. Butler remain on his case, he had no right to retain her or reinstate her as appointed counsel.[4]  Perry therefore cannot prevail on this claim.

Claim 3: Failure to hear and rule on motions

Perry next argues that the trial court failed to hear various motions that were filed. Specifically, he claims that Mr. Miller filed two motions in limine that were never ruled on, the court never ruled on Mr. Enriquez's suppression motion, and the court failed to rule on two motions that Perry filed proceeding *pro per*.  The superior court denied Perry habeas relief on this claim, concluding as follows:

> [Perry] also claims that various judges from this court failed to rule on various pretrial motions submitted by [him].

---

[4]       Perry's suggestion that he believed that Ms. Butler somehow would have handled the case better than Mr. Enriquez is belied by his own conduct.  Perry filed two *Marsden* motions against Ms. Butler complaining about her effectiveness and seeking her removal.  He only filed one *Marsden* motion against Mr. Enriquez.  He obviously was not satisfied with Ms. Butler's representation.

-16-

[Perry], however, failed to attach sufficient documentation showing that by the time of trial, when he was self-representing, he had specified to the court which motions remained undecided and pressed the court to rule on those motions; rather, he voluntarily absented himself from the trial after jury selection and never returned.  As such, he waived the right to appellate review of this matter (*People v. Lewis* (2008) 43 Cal. 4th 415).  Having waived the right to appellate review, appellate counsel was not ineffective in failing to raise this claim on appeal.  Therefore, the claim is barred under [(*In re Seaton* (2004) 34 Cal. 4th 193)].

Regardless, [Perry] does not detail any of the motions that he claims remained outstanding or show that he would have prevailed on the motions had the court ruled upon them. . . .

The superior court's conclusion was not unreasonable given the facts of this case.  The failure of the court to rule on any motions was due to the fact that there was a revolving door of attorneys in this case and, once one attorney left for whatever reason, new counsel was entitled to his own trial strategy and to file whatever motions thought to be necessary.  In the end, as the superior court noted, Perry elected to proceed *pro per*.  On March 3, 2009, Perry stated that he had no motions to make other than a motion for a continuance, which was denied by the court.  And although the court assured Perry on March 5, 2009, in denying his reverse-*Faretta* motion, that "[a]ny motions you want to make, I'm letting you know right now that you can make any motions you need to make that you feel like acting as your own lawyer, you can make.  I will hear them and I will rule on . . . them fairly," Perry did not make any motions.  Instead, he absented himself from trial.  Under California law, by failing to press the trial court to rule on any motions that had been filed, Perry effectively abandoned them.  *See People v. Jones*, 147 Cal. Rptr. 3d 905, 909-10 (Cal. Ct. App. 2012) (defendant abandoned motion by failing to bring it to the court's attention where the court inadvertently failed to rule on it due to multiple continuances); *People v. Brewer*, 96 Cal. Rptr. 2d 786, 800 (Cal. Ct. App. 2000) ("[W]here a court, through inadvertence or neglect, neither rules nor reserves its ruling, the party who

objected or made the motion must make an effort to have the court actually rule, and that when

the point is not pressed and is forgotten the party will be deemed to have waived or abandoned

the point."); *People v. Skaggs*, 51 Cal. Rptr. 2d 376, 380 (Cal. Ct. App. 1996) ("By failing to

request [a ruling on a motion] and never raising the issue again, [the defendant] abandoned the

motion he now claims he made.").  Any failure of the trial court to hear and rule on motions

Perry thought were necessary was his own doing, and he cannot prevail on his claim that he was

denied a fair trial.

<u>Claims 4 & 5: Failure to hold a preliminary hearing on his prior convictions</u>

Perry next argues that the trial court abused its discretion in amending the complaint to

include his prior convictions without first requiring that those priors be proved at a preliminary

hearing by a preponderance of the evidence.  Perry raised this claim in his petition for habeas

relief to the superior court, which the court denied on the ground that under state law, a

prosecutor is not required to prove a prior conviction in a preliminary hearing.

"In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,*

502 U.S. 62, 68 (1991).  It is well-settled that federal habeas relief is available only to state

prisoners who are "in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254 (a); *see also Swarthout v. Cooke,* 131 S. Ct. 859, 861 (2011) (per

curiam) ("We have stated many times that federal habeas corpus relief does not lie for errors of

state law.") (citation and internal quotation marks omitted); *Wilson v. Corcoran,* 131 S. Ct. 13,

16 (2010) ("it is only noncompliance with *federal* law that renders a State's criminal judgment

susceptible to collateral attack in the federal courts") (per curiam); *Langford v. Day,* 110 F.3d

-18-

1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).  Perry did not raise before the state courts and does not raise in his Petition before this Court an issue of federal constitutional dimension, and he cannot accordingly prevail on this claim.

Claims 6 & 7: Ineffective assistance of counsel

Perry additionally raises two ineffective assistance of counsel claims.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Perry must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the

defendant fails on one).  In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

<u>Claims related to Mr. Enriquez's representation</u>

Perry makes two claims concerning Mr. Enriquez's representation.  First, he argues that Mr. Enriquez filed a motion to suppress evidence pursuant to California Penal Code § 1538.5 without informing him that such a motion had been filed.  Second, he claims that Mr. Enriquez failed to "litigate the motion," or "'press' the court to set [a] date, time, and [a] place to hear and rule on the motion."

The Supreme Court has stated that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta,* 422 U.S. at 834 n.46 (citation omitted).  Nevertheless, a criminal defendant who elects to represent himself at trial may still raise a complaint about the effectiveness of pretrial counsel.  *See Cook v. Schriro*, 538 F.3d 1000, 1025-16 (9th Cir. 2008) (defendant failed to establish that the performance of counsel who was appointed to him prior to his self-representation was prejudicial); *Brown v. Carey*, No. C 06-0264, 2011 WL 5444251, at *9 (N.D. Cal. Nov. 9, 2011) (petitioner who elected to represent himself at trial was not barred from claiming that pre-trial counsel was ineffective).

Perry, however, cannot prevail on his claim that Mr. Enriquez's performance was deficient. Mr. Enriquez did file a suppression motion with the trial court on April 17, 2006. Mr. Enriquez additionally filed a *Pitchess* motion[5] on April 24, 2006. The following day, on April 25, 2006, Mr. Enriquez filed a motion to continue trial, noting that there were two pending motions and that information derived from the *Pitchess* motion was "material and crucial" to the determination of the motion to suppress. The trial court granted the motion for a continuance, and heard the *Pitchess* motion on May 26, 2006. The matter was under advisement when Mr. Enriquez was relieved as counsel due to a conflict on June 6, 2006. Mr. Enriquez's failure to "press" the court to hear the suppression motion while he was serving as Perry's counsel was thus clearly a tactical decision which this Court may not second guess. *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). He believed that the *Pitchess* motion needed to be heard and decided before the motion to suppress, and he was relieved before the *Pitchess* motion was decided. Perry has accordingly failed to establish that Mr. Enriquez was deficient in any regard. *See id.* at 697 (courts may consider either prong of the *Strickland* test first and need not address both prongs if the defendant fails on one).

---

[5]     In *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), the California Supreme Court recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as a *Pitchess* motion through the enactment of California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1043 through 1045. *People v. Mooc*, 36 P.3d 21, 24 (Cal. 2001) (citation omitted).

Perry also alleges that Mr. Enriquez failed to inform him that he had filed a suppression motion on his behalf.  First, Perry's claim that he was unaware of the motion is dubious given that he was very involved in his case and exercised extensive oversight of his attorneys, resulting in numerous *Marsden* motions, including a complaint that Ms. Butler did not file a suppression motion in the manner Perry wanted.  Second, he has failed to establish how his alleged lack of knowledge of the earlier motion to suppress prejudiced him.

On May 3, 2005, the first day of trial, Perry, proceeding *pro per*, requested a continuance in part because, although he had been planning on filing a suppression motion, he had allegedly been unsuccessful in subpoenaing several witnesses who he claimed would testify in support of that motion.  The trial court denied Perry's motion for a continuance in part on the ground that he had the addresses for three of the four witnesses that he wished to subpoena, one of which was his wife, and had failed to properly fill out the subpoena forms.  The court continued:

> [Y]ou're your own lawyer so that's not anybody's fault here.  You . . . can still do it.  You have address[es] for 'em.
> Make sure and sill those out.  Do it today.  And by the time it gets to the defense case your investigator should easily be able to . . . have served them.
> . . . .
> [T]hat leaves us almost six days to subpoena someone.  An investigator should be able to do that if they're at that address, okay?

Perry responded, "Okay."  As to the fourth witness, who was incarcerated, the court noted that Perry might not have enough time to order production of that witness, but that because Perry claimed to know which prison the witness was incarcerated in, he should have put in a request to find him "a long time ago.  And . . . again, that was explained to you early on when you went pro per."  The court noted that a suppression motion "is not a difficult thing to file," and that Perry had sufficient time to subpoena witnesses and file the motion.

-22-

Later in that same hearing, the court noted that Perry's wife had entered the courtroom and offered to order her on the spot to appear the following week since Perry had indicated that she was one of the four witnesses he wished to subpoena in support of his suppression motion. Perry declined the court's offer.  In concluding the hearing, the court informed Perry that it would be available the following day to sign subpoenas as needed, telling him one last time, "[s]o you need to get on this, is what I'm telling you to get somebody to sign whatever you need signed."

There is no evidence that Perry attempted to subpoena any witnesses in support of his motion for suppression or that he filed any such motion.  Rather, as already discussed, on March 5, 2009, he made a reverse-*Faretta* motion, and when that was denied, he absented himself from trial.  The court made clear that it was up to him to file any motions he believed were necessary and urged him to take appropriate and immediate action.  Perry has thus failed to establish that Mr. Enriquez's failure to inform him that he had filed a suppression motion prejudiced him in any way; rather, it was Perry's lack of action when serving as his own counsel that was ineffective.  *See Cook v. Ryan*, 688 F.3d 598, 609 (9th Cir. 2012) ("Even if [the petitioner's] pretrial counsel performed deficiently during the seven months he represented [the petitioner] . . . , [the petitioner] could have corrected those errors once he decided to represent himself.").  Perry therefore cannot prevail on his claim that Mr. Enriquez's counsel was ineffective.

Claim with respect to Mr. Lippsmeyer

Perry next argues that Mr. Lippsmeyer was ineffective at sentencing for failing to "'press' the court to hear outstanding motions that [were] filed with the court and not ruled on."

Specifically, Perry argues that "'[a] 3051 p.c.' could [have] been properly heard and ruled on." The superior court denied Perry habeas relief on this claim on the ground that he failed "to specify any such postconviction motion that was ever raised, nor does he attach any copy of any postconviction motion.  The court's underlying file . . . does not contain any sealed or unsealed postconviction motion."

Preliminarily, the Ninth Circuit has held that the Supreme Court has "not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases[,] [and] [t]herefore, . . . there is no clearly established federal law as determined by the Supreme Court in this context." *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (citing *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005)).  The *Strickland* Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith*, 397 F.3d at 1244 (quoting *Strickland*, 466 U.S. at 686)).  *But see Gonzalez v. Knowles*, 515 F.3d 1006, 1014-16 (9th Cir. 2008) (applying *Strickland* and concluding that counsel was not ineffective for failing to investigate mitigating evidence of mental illness and for not calling family members to testify on his behalf at sentencing); *Daire v. Lattimore*, No. CV 10-3743, 2012 WL 1197645, at *2-3 (C.D. Cal. Apr. 9, 2012) (acknowledging it was bound by the decision in *Grigas*, but disagreeing with *Grigas's* holding that the Supreme Court had not yet applied *Strickland* in non-capital sentencing proceedings).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey*, 549 U.S. at 77 (citation omitted); *Davis*, 443 F.3d at 1158-59 (holding that petitioner could not prevail on his claim that

-24-

counsel failed to investigate or present mitigating evidence at sentencing because there was no governing federal law on the matter).

Even assuming that the *Strickland* standard governs claims that counsel was ineffective in the context of a non-capital sentencing proceeding, Perry cannot prevail on his claim.  Perry did file a *pro se* motion pursuant to California Welfare and Institutions Code § 3051 for an evaluation to determine whether or not he was endangered of being addicted to drugs, and he is correct in asserting that the court did not rule on that motion.  California Welfare and Institutions Code § 3051 provides in pertinent part that after a defendant is convicted of a felony and sentenced, if it appears to the court that the defendant may be or is in danger of becoming addicted to narcotics, the judge shall suspend the sentence and order the district attorney to file a petition for commitment to the Department of Corrections and Rehabilitation.  CAL. WELF. & INST. CODE § 3051(a).  Perry, however, was ineligible for such commitment because his aggregate sentence exceeded six years' imprisonment.  *Id*. § 3052(a)(2).  Had Mr. Lippsmeyer pressed the court to hear Perry's motion, he would have been unsuccessful, and counsel will not be deemed ineffective for failing to raise meritless claims or motions.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under *Strickland* from failure to file a motion, petitioner must show that (1) had counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to the petitioner); *Rupe v. Wood*, 93 F.3d 1434, 1440 (9th Cir. 1996) (counsel was not deficient for failing to take futile actions); *see also Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (counsel's failure to raise a weak issue did not constitute ineffective assistance).

In any event, Mr. Lippsmeyer argued at sentencing that Perry was addicted to narcotics, and urged the court to consider incarcerating him at a rehabilitation center rather than in a traditional correctional facility.  Mr. Lippsmeyer thus advocated, albeit unsuccessfully, for the result Perry sought, and Perry's ineffective assistance of counsel claim is without merit.

<u>Claims related to Mr. Bales</u>

Perry's claim with respect to his appellate counsel is somewhat unclear.  He argues that prior to sentencing, he retained Mr. Bales to file a motion for a retrial, but that Mr. Bales did nothing.  Perry then sent Mr. Bales a letter requesting that "he and his firm recuse[] [themselves] from the case [but Mr. Bales] ignored the letter."  Mr. Bales then appealed on Perry's behalf, but Perry claims Mr. Bales failed to consult with him during the appeal process and accordingly failed to raise certain claims on appeal that Perry believed were meritorious.  He claims Mr. Bales should have given the record on appeal to the appellate program to litigate the appeal on his behalf.  The superior court rejected Perry's claim that he was entitled to habeas relief on the ground that Mr. Bales proceeded to represent him after Perry wrote to him and removed him from the case:

> This is a matter [Perry] should have fully pursued with the Third District Court of Appeal.  Instead, [Perry] attempted to mail documents to the Third District, which twice communicated back to him that he needed to file a substitution of attorneys . . . .

Perry has attached to his petition several letters from the law firm of Mr. Bales.  In the first letter, attorney John McCurley acknowledged that, after the firm filed an appellate brief with the Court of Appeal, Perry terminated the firm's representation of him.  Mr. McCurley also advised Perry in that letter on the deadlines for filing a petition for review as well as a federal petition for writ of habeas corpus.  Approximately two weeks later, Mr. McCurley wrote a letter

enclosing a petition for review, indicating that Perry must have changed his mind about terminating the firm.  In a later letter, Mr. Bales explained to Perry that the firm could not raise on appeal one of Perry's suggested arguments because his trial counsel had failed to object and the firm's hands were tied.  Finally, the firm sent two additional letters informing Perry that the firm would be forwarding him records which he apparently requested.

Perry is not entitled to habeas relief on the ground that Mr. Bales allegedly continued to represent him where Perry failed to comply with the Third District's notice that he needed to file a substitution of attorneys.  It appears in any event that Perry reinstated the firm at some point. The remainder of his claim appears to be that Bales's firm failed to raise arguments on appeal that Perry believed to be meritorious.  Specifically, Perry argues that Mr. Bales was ineffective for failing to argue on appeal that Mr. Enriquez was ineffective for failing to let Perry know that he had filed a suppression motion, and that the court erred in failing to rule on that motion.  Yet, as already discussed, under California law, Perry abandoned Mr. Enriquez's suppression motion by failing to press the court to hear it, and he failed to file a suppression motion of his own once he elected self-representation.  Mr. Bales would thus not have succeeded in raising such a claim on direct appeal.  The Supreme Court has stressed that it is essential for appellate counsel to "examine the record with a view to selecting the most promising issues for review."  *Jones v. Barnes*, 463 U.S. 745, 752 (1983).  Counsel may "winnow[ ] out" weaker arguments on appeal and focus on key issues which present the most promising for review.  *Id.* at 751.  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  "Generally, only when ignored issues are clearly

stronger than those presented, will the presumption of effective assistance of counsel be

overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).  Perry has failed to present to this

Court any meritorious claims which Mr. Bales and his firm might have been deficient in raising

on direct appeal and thus cannot prevail on his ineffective assistance of counsel claim.

Claim 9: Superior court habeas petition

Perry additionally argues that the superior court abused its discretion in transferring his

petition for habeas relief to the same superior court judge who presided over his trial.  He raised

this claim in a motion for reconsideration from the denial of his habeas petition, which the

superior court construed as a motion for disqualification and denied on the ground that Perry

failed to comply with certain procedural requirements for filing a petition to disqualify a judge,

and that disagreement with a court's ruling do not constitute grounds for disqualification.

Perry fails to raise a claim of constitutional dimension cognizable in this Court because

this Court is bound by the state court's interpretation of California state law.  *Bradshaw v.

Richey*, 546 U.S. 74, 76 (2005) (per curiam) (A fundamental principle of our federal system is

"that a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus.").  And Perry has not

alleged that the judge who presided over both his trial and superior court habeas petition was

unable to be fair or impartial.  To the extent Perry disagrees with the superior court's resolution

of his habeas claims, the Ninth Circuit has repeatedly recognized that adverse rulings alone are

insufficient to demonstrate judicial bias.  *See Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir.

2008); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 712-13 (9th Cir. 1993); *Davis v.

Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1981).  This is true even where the rulings are erroneous.

-28-

*Hasbrouck v. Texaco*, 842 F.2d 1034, 1046 (9th Cir. 1987); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983).  Thus, this Court cannot offer Perry relief because he failed to comply with state procedural rules for filing a motion for disqualification of the superior court judge, and he has provided no basis for this Court to conclude that that judge was biased.  Perry therefore cannot prevail on this claim.

Evidentiary hearing

Finally, Perry requests an evidentiary hearing.  Other than with respect to his claim that Mr. Miller was allowed to withdraw over his objection without stating his reasons for doing so on the record, Perry has failed to specify what evidence he wishes to present for each claim.  A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state

-29-

hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3)

the fact-finding procedure employed by the state court was not adequate to afford a full and fair

hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts

were not adequately developed at the state-court hearing; or (6) for any reason it appears that the

state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670

(quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1

(1992).

     As discussed above, the Court reserves its decision on whether to grant an evidentiary

hearing with respect to Claim 1.  The Court declines to grant an evidentiary hearing with respect

to Claims 2 through 9.  Because Perry does not cite to new laws or underlying facts that were not

developed on the record before the state courts with respect to those claims, he has failed to

satisfy his burden of proof under 28 U.S.C. § 2254(e)(2).  Accordingly, Perry's request for an

evidentiary hearing on Claims 2 through 9 must be denied.

V. CONCLUSION AND ORDER

     Perry is not entitled to relief on Claims 2 through 9 in his Petition.

     **IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**, except with regard to Claim 1.  This Court reserves ruling on

Claim 1, whether the trial court denied Perry his right to retained counsel of his choice, and

whether an evidentiary hearing on Claim 1 is warranted.

     **IT IS FURTHER ORDERED THAT** Respondent must supplement the record

regarding the circumstances of Mr. Miller's withdrawal.  *See* Rule 7(a), Rules Governing § 2254

Cases in the United States District Courts; *Blackledge,* 431 U.S. at 82.  At a minimum,

-30-

Respondent should determine if the October 23, 2008, hearing in which Mr. Miller was relieved

was transcribed, and if so, obtain a copy of the reporter's transcript of that hearing.  Respondent

must file a status report within 30 days of the entry of this Order detailing the efforts it has made

to obtain supplementary documentation of Mr. Miller's withdrawal and the time line for filing

any supplementary documentation with this Court.

      **IT IS FURTHER ORDERED THAT**, to the extent that the Petition is denied, the Court

has tentatively concluded to deny a Certificate of Appealability with respect to Claims 2 through

9.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate

of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537

U.S. at 327)).  Once this Court has received the supplemental record and considered the merits of

Claim 1, the Court will enter final judgment.  Until that time, this decision will be subject to

revision in conformity with Federal Rule of Civil Procedure 54(b).

      Dated: September 15, 2014.

                                       /s/James K. Singleton, Jr.
                                       JAMES K. SINGLETON, JR.
                                     Senior United States District Judge